COURT OF APPEALS OF VIRGINIA


Present: Judges Bumgardner, Humphreys and Clements
Argued at Richmond Virginia


SHARON PEACE

MEMORANDUM OPINION* BY
v.    Record No. 2651-99-2          JUDGE ROBERT J. HUMPHREYS
                                    NOVEMBER 14, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ESSEX COUNTY
Horace A. Revercomb, III, Judge

Joseph D. Morrissey (James T. Maloney;
Morrissey & Hershner, PLC, on brief), for
appellant.

Kathleen B. Martin, Assistant Attorney
General (Mark L. Earley, Attorney General,
on brief), for appellee.


Sharon Peace appeals her convictions after a bench trial for

contributing to the delinquency of a minor and maintaining a

common nuisance. Peace contends that the trial court erred in

finding the evidence sufficient to convict her of these offenses.

"Where the sufficiency of the evidence is challenged after

conviction, it is our duty to consider it in the light most

favorable to the Commonwealth and give it all reasonable

inferences fairly deducible therefrom. We should affirm the

judgment unless it appears from the evidence that the judgment

is plainly wrong or without evidence to support it. Code

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

§ 8-491." Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

Furthermore, "[a]n appellate court must discard all evidence of the accused that conflicts with that of the Commonwealth." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). "The credibility of witnesses, the weight accorded testimony, and the inferences to be drawn from proven facts are matters to be determined by the fact finder." Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). The judgment of a trial court will be disturbed on appeal only if plainly wrong or unsupported by the evidence. See Code § 8.01-680.

In the present case, the relevant evidence established that Peace was a single parent who, between the time period of June 1, 1998 and March 15, 1999, attended nursing classes and worked several hours out of each day of the week. Her son, Sean Peace, who was 15 years of age, lived with her at her home. Sean lived in the garage of Peace's house. The garage was detached from the main house by a distance of about four feet.

During this time period, several of Sean's friends from Essex High School, ranging in ages from fourteen to nineteen, would visit Sean in his garage bedroom and smoke marijuana, cigarettes and cigars. Marijuana was often passed between the individuals who were there at the time, and one individual sold marijuana while there.

-

Peace claimed that she knew nothing about the marijuana. However, several young men testified at trial that Peace would often enter the room just after they had been smoking marijuana. Sean and his friends usually kept the door to the garage locked while they were smoking marijuana and when they heard Peace try to enter, they would hide it and burn candles and incense, and smoke cigarettes and cigars to cover up the smell. Despite this effort, at least one "bong" and some number of "bowls", used as smoking paraphernalia, were often in view when Peace would enter the room.

On one occasion when Peace entered the garage after Sean and his friends had been smoking marijuana, cigarettes, and cigars, she stated that "they were not to be doing it with the garage door open". She often told the kids that "it shouldn't be happening," "don't do it . . . or get out".

In addition, at some point, Peace saw a "bong" in Sean's room and told the kids to "get rid of it, or she was going to trash it." She later told the owner of the bong to "get rid of it" and that "she didn't want [it] in her house".

Code § 18.2-371 provides, in pertinent part, that:

> Any person eighteen years of age or older, including the parent of any child, who (i) <u>willfully</u> contributes to, encourages, or causes any act, omission, or condition which renders a child delinquent, in need of services, in need of supervision, or abused or neglected as defined in § 16.1-228 . . . shall be guilty of a Class 1 misdemeanor.

(Emphasis added.)

-

"'Willful' generally means an act done with a bad purpose, without justifiable excuse, or without ground for believing it is lawful. The term denotes 'an act which is intentional, or knowing, or voluntary, as distinguished from accidental.' The terms 'bad purpose' or 'without justifiable excuse,' while facially unspecific, necessarily imply knowledge that particular conduct will likely result in injury or illegality." Ellis v. Commonwealth, 29 Va. App. 548, 554, 513 S.E.2d 453, 456 (1999).

The trial court found that, based on the evidence, there was "no doubt" Peace "knew what was going on." Accordingly, the court held that by Peace's failure to act, she "encouraged" the activity, within the meaning of the statute. The trial court also stated "I think it may be under the omission part of the Statute." On appeal, Peace contends that the evidence was insufficient to prove that she had any knowledge the activity was taking place. She also argues that the evidence failed to prove she "encouraged" the activity, or "willfully" omitted to act.

"Where inferences are relied upon to establish guilt, they must point to guilt so clearly that any other conclusion would be inconsistent therewith." Person v. Commonwealth, 10 Va. App. 36, 38, 398 S.E.2d 907, 909 (1990)(citation omitted). "Inferences may be taken from proved circumstances only to the extent those inferences are reasonable and justified." Webb v. Commonwealth, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963).

-

"Furthermore, where the Commonwealth's evidence as to an element of an offense is wholly circumstantial, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" Moran v. Commonwealth, 4 Va. App. 310, 314, 357 S.E.2d 551, 553 (1987) (citation omitted). However, "[t]he factfinder need not believe an accused's explanation and, if that explanation is not believed, may infer that the accused is lying to conceal his guilt." Phan v. Commonwealth, 258 Va. 506, 511, 521 S.E.2d 282, 284 (1999).

Viewing the evidence in the light we must, we find that the trial court could conclude, beyond a reasonable doubt, that Peace knew her son and his friends were smoking marijuana. However, we do not agree that by failing to act on this knowledge, Peace "willfully" "encouraged" the activity within the meaning of the statute, nor that she engaged in a "willful" "omission" to act.

First, the word "encourage" is not defined in the statute itself, nor do we find a controlling definition of the word, so we look to other sources to define its meaning. Webster's Third New International Dictionary defines "encourage" as "to give courage to," to "inspire with courage, spirit, or hope," to "hearten," "to spur on," to "stimulate," to "incite," "to give help or patronage," to "foster," "to call forth," to "produce,"

-

or "create."  Webster's Third New International Dictionary (1993).

Each of these defining terms describes the word as encompassing an affirmative act, not an omission or failure to act.  Here, there was no evidence which established that Peace took any affirmative act to "encourage" Sean and his friends to smoke marijuana.  In fact, the trial court specifically stated that the evidence did not establish that she "caused" the activity.

In addition, the trial court found, as a matter of fact, that when Peace found the bong, "she was upset," "she was very blunt," and told the owner to "get rid of it."  We do not agree that Peace's action in this regard constitutes willfully "encouraging" the activity.  Instead, a reasonable inference is that Peace was attempting, although unsuccessfully and perhaps ineffectually, to discourage the activity.  Moreover, based on these facts and the reasonable inference already noted, we cannot find as a matter of law that Peace omitted to act. Accordingly, we reverse and dismiss the conviction for contributing to the delinquency of a minor.

By holding here that Peace did not "encourage" the activity by failing to act, and by finding that based on these facts there was no willful omission, we do not find that a parent's refusal to act may never fall within the statute.  However, in this case, the evidence simply does not establish a willful

-

omission to act which proximately resulted in a continuation of delinquent activity.

Next, Code § 18.2-258 provides:

> A. Any . . . dwelling house, apartment, building of any kind . . . which with the knowledge of the owner . . . is frequented by persons under the influence of illegally obtained controlled substances or marijuana, as defined in § 54.1-3401, or for the purpose of illegally obtaining possession of, manufacturing or distributing controlled substances or marijuana, or is used for the illegal possession, manufacture or distribution of controlled substances or marijuana, shall be deemed a common nuisance. Any such owner . . . who knowingly permits, establishes, keeps or maintains such a common nuisance is guilty of a Class 1 misdemeanor . . . .

The statute very clearly requires 1) that the owner of the premises have knowledge that it is being frequented for the purpose of the illegal possession and distribution of marijuana, and 2) that the owner knowingly permit, keep, or maintain the nuisance. See St. Clair v. Commonwealth, 174 Va. 480, 5 S.E.2d 512 (1939).

Peace again argues that the evidence was insufficient to prove her knowledge of the marijuana use and was therefore inadequate to support a conviction pursuant to this statute. However, as we have noted above, we find that the trial court reasonably concluded that Peace knew about the marijuana.

Nevertheless, Peace did not "establish," "keep," or "maintain" the premises for the purpose of the prohibited

-

activity, as indicated by the factual findings of the trial court referenced above.  The question is whether Peace, by knowing about the illegal activity and, as the trial court stated, "allowing [it] to continue," "permitted" the activity. Given the trial court's factual findings, we do not find that there is any evidence in this record to establish that Peace "permitted" the activity within the meaning of Code § 18.2-258.

The Supreme Court of Virginia has noted that "Webster's International Dictionary, 2d ed. defines the verb 'permit' to mean 'to allow the act or existence of; to consent to expressly or formally; to grant (one) license or liberty; to authorize; to give leave.'  The word 'allow' is not as positive as the word 'permit,' being more of a synonym with the word 'suffer,' while the word 'permit' denotes a decided assent." Nolde Bros. v. Chalkley*, 184 Va. 553, 566-567, 35 S.E.2d 827, 833 (1945)(citation omitted).

The trial court found no such affirmative act or "decided assent" in this case, and very clearly indicated that Peace did not "allow" the activity by finding that she became upset and discouraged the activity when she was confronted with it.

Accordingly, we also reverse and dismiss Peace's conviction under § 18.2-258.

Reversed and dismissed.

-